IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia,                              :
                          Appellant                :
                                                   :    No. 529 C.D. 2022
                          v.                       :
                                                   :    Argued: November 9, 2023
Janice Hammond                                     :


BEFORE:    HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE ELLEN CEISLER Judge
           HONORABLE LORI A. DUMAS, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE DUMAS                                          FILED: May 29, 2024


        The City of Philadelphia (City) appeals from a judgment entered in the
Court of Common Pleas of Philadelphia County (trial court) on December 11, 2023,
which imposed $250 in fines and fees upon Janice Hammond (Hammond) for
persistent fire code safety violations on her property that spanned more than two
years and posed a danger to the surrounding neighborhood.  Upon review, we
conclude that this judgment constitutes an abuse of the trial court's discretion.  We
therefore vacate the judgment and remand for the trial court to recalculate
appropriate fines and costs.

# I. BACKGROUND[1]

Hammond owns a three-unit residential rental property located at 908 Duncannon Avenue in Philadelphia. In June 2017, the City's Department of Licenses and Inspections (Department) found the property infested with insects and generally unsanitary, and that Hammond illegally operated the property as a rooming house. Accordingly, the City issued a "cease operations" notice. Hammond never corrected the issues, and the notice remained in place.

On or about April 29, 2019, the Department inspected the property and discovered that tenants were again living at the property. In addition, the Department found the fire alarm system was inoperable and had not been inspected. The Department issued a notice of violation citing the City Fire Code.[2] The notice informed Hammond that daily fines up to $1300 could be imposed.[3] Additionally, the notice informed Hammond that failure to comply would result in an automatic assessment of reinspection fees.

On May 1, 2019, upon reinspection, the Department found that the violations had not been corrected. Thereafter, on June 4, 2019, the Department again reinspected the property, found the fire alarm system remained inoperable, and issued a second "cease operations" notice. Hammond did not appeal these notices.

In July 2021, the City commenced this action seeking statutory fines for Hammond's failure to abate the ongoing Fire Code violations. The trial court held hearings in February and March 2022.

---

[1] The relevant facts are not in dispute. We derive this background from the Notes of Testimony (N.T.) and the exhibits introduced at two hearings. *See* N.T. Hr'g, 2/24/22; N.T. Hr'g, 3/24/22.

[2] The Fire Code is found in Title 4 of the Philadelphia Code. *See* City of Phila., Pa. Code (Phila. Code), Title 4, Subcode F (2020) (Fire Code).

[3] *See* Section 1-109 of the Phila. Code.

2

At the initial hearing, the City established that the property was an attached building located in a high-traffic, residential and commercial neighborhood. In addition, the City introduced evidence demonstrating that Hammond owned numerous properties in the City. Hammond also conceded that she was aware of the violations by June 2019. At the close of the hearing, the trial court informed the parties that it would continue the matter for 30 days and asked the Department to reinspect the property for compliance.

At the second hearing, the City informed the trial court that it had reinspected the property and found that the fire alarm system was inoperable. Additionally, there were numerous other safety defects apparent.[4] However, when the City's inspector arranged for emergency services inspectors to ascertain whether the building was structurally deficient or imminently dangerous, Hammond denied further access to the property.

Following these hearings, the City requested that the trial court impose fines and fees totaling $1,028,600, for violations that persisted 869 days. Initially, the trial court issued a "final order" imposing fines and fees as requested by the City. *See* Trial Ct. Order, 3/25/22, at 2 (unpaginated) (Initial Order). Hammond timely sought reconsideration, which the trial court granted and issued an amended "final order" imposing $250 in fines and fees. *See* Trial Ct. Order, 4/6/22, at 2 (unpaginated) (First Amended Order). The trial court offered no immediate

---

[4] City Inspector Natasha Lee testified:

The property is currently vacant and severely neglected inside. A complete renovation is necessary prior to safe occupancy. There were multiple electrical defects, exposed ceiling joists, large wall surface holes and defects, and it was observed on all levels. There were hazardous, dilapidated conditions found inside the basement.

N.T. Hr'g, 3/24/22, at 6.

3

explanation for this amendment.  *See id.*  However, the court issued a second amended "final order," explaining that its initial order was "inaccurate" and "a clerical error" and reaffirming $250 in fines and fees.  *See* Trial Ct. Order, 4/21/22, at 2-4 (unpaginated) (Second Amended Order).

On May 20, 2022, the City filed a notice of appeal and thereafter filed a court-ordered Pa.R.A.P. 1925(b) statement.[5]  The trial court issued a brief, responsive opinion.[6]

## II. DISCUSSION[7]

## A. The Parties' Arguments

The City asserts that the nominal fine imposed by the trial court constitutes a gross abuse of its discretion.  City's Br. at 19.  According to the City, Hammond had notice of the "grave safety violations" but nonetheless waited years to remedy them.  *Id.*  These violations displaced tenants and put neighbors at risk.

---

[5] On June 3, 2022, the trial court directed the entry of judgment.  *See* Trial Ct. Order, dated 6/3/22.  On June 6, 2022, the trial court vacated the entry of judgment.  *See* Trial Ct. Order, dated 6/6/22.  For both orders, notice was given on June 6, 2022.  *See* Pa.R.Civ.P. 236.  Upon discovering this procedural quirk, this Court directed the City to perfect its appeal by filing a praecipe for entry of judgment.  *See* Order, Cmwlth. Ct. Dkt. No. 529 C.D. 2022, 11/22/23.  The City complied, and judgment was entered on December 11, 2023.  Thus, this appeal may proceed.  *See Johnston the Florist, Inc. v. TEDCO Constr. Corp.*, 657 A.2d 511, 514-15 (Pa. Super. 1995) (*en banc*) (holding that the Court may entertain an appeal in which an appellant prematurely filed a notice of appeal before the trial court entered judgment).

[6] Before addressing the City's substantive issues, the trial court opined that the City had appealed improperly from an order denying reconsideration.  *See* Trial Ct. Op., 7/18/22, at 2-3.  This is incorrect.  *See* Notice of Appeal, 5/20/22 (specifically appealing the Second Amended Order).  Further, as set forth, *supra* note 5, the City's appeal was perfected upon the entry of judgment.

[7] Generally, a trial court's assessment of a civil penalty is reviewed for an abuse of discretion. *See Borough of Kennett Square v. Lal*, 643 A.2d 1172, 1175 (Pa. Cmwlth. 1994). An abuse of discretion is shown "when the law is overridden or misapplied, or when the judgment exercised is manifestly unreasonable or the result of partiality, prejudice, bias or ill will." *Blair v. Zoning Hr'g Bd. of Twp. of Pike*, 676 A.2d 760, 761 (Pa. Cmwlth. 1996).

4

*See id.* Moreover, the City asserts, Hammond is a sophisticated landlord that owns multiple properties in the City. *See id.*

The City maintains that the trial court should have considered both mitigating and aggravating factors. *See id.* at 22 (citing *Lal*, 643 A.2d at 1175; *JPR Holdings LLC v. City of Phila* (Pa. Cmwlth., No. 820 C.D. 2019, filed Jan. 8, 2021), 2021 WL 71711).[8] However, according to the City, the trial court only considered mitigating factors, which were factually inaccurate or otherwise inadequate to justify the fine, particularly when balanced against several aggravating factors. *Id.* at 19, 22. Moreover, according to the City, this Court has long recognized that large fines can be appropriate in cases where the property owner has failed to remedy violations for excessive periods, particularly when coupled with other aggravating factors. *See id.* at 29 (citing several cases).

In response, Hammond suggests that "[t]he trial court properly exercised its discretion in awarding a nominal fine against a senior citizen who owned the property for over 25 years and ceased all rental activity since the [c]ease [o]perations [n]otice." Hammond's Br. at 7. Hammond also suggests that there was "very limited" evidence of code violations. *Id.* at 9. According to Hammond, "[t]here is no imminent safety hazard." *Id.* at 11 (asserting that the property's vacancy lessened Hammond's obligation to maintain a fire alarm system).

In its reply brief, the City notes that Hammond's property is attached and "shares a wall with another property;" thus, its vacancy is more properly viewed as an aggravating factor. City's Reply Br. at 3. The City also reiterates that the trial court's suggestion that the notice of violations was mailed to an incorrect address is simply inaccurate. *Id.* at 4. Finally, the City rejects Hammond's attempt to elicit

---

[8] Parties may cite to unreported decisions of this Court as persuasive authority. *See* 210 Pa. Code § 69.414(a)

sympathy based on her age.  *See id.* at 5-7.  According to the City, Hammond is a sophisticated landlord who purchased multiple properties as an investment but simply failed to maintain them properly.  *See id.*

### B. Analysis

The primary purposes of a fine or penalty are to (1) "punish violators" and (2) "deter future or continued violations."  *Commonwealth v. Eisenberg*, 98 A.3d 1268, 1283 (Pa. 2014).  Moreover, this Court has approved the imposition of daily fines for excessive periods of noncompliance.  *See, e.g.*, *Woodruff v. Lower Southampton Twp.*, 516 A.2d 834 (Pa. Cmwlth. 1986) (upholding $100 per day fine, totaling $157,600, for operating junkyard in violation of zoning ordinance); *E. Penn Twp. v. Troxell* (Pa. Cmwlth., No. 875 C.D. 2011, filed Apr. 5, 2012) (unreported) (upholding $500 per day, per violation fine, totaling $624,500, for parking commercial vehicles, raising pigs, storing junk, and impermissibly operating a trucking terminal).  Substantial fines are even more appropriate where the underlying violations created an "imminent safety hazard."  *See, e.g.*, *City of Phila. v. Neely* (Pa. Cmwlth., No. 480 C.D. 2022, filed Mar. 25, 2024) (*Neely II*), slip op. at 11, 2024 WL 1251373, at *5-6 (approving $113,800 in fines for property owner's "repeated failures to correct the potentially hazardous conditions"); *JPR Holdings LLC*, slip op. at 12-13, 2021 WL 71711, at *4-5 (approving more than $50,000 in fines for violations that persisted more than two years).

In arriving at an appropriate penalty, the trial court should weigh all aggravating and mitigating factors.  *Lal*, 643 A.2d at 1175; *see generally JPR Holdings LLC*.  "The amount of the fine must bear some relationship to the gravity of the offense that it is designed to punish."  *City of Phila. v. Neely* (Pa. Cmwlth.,

6

1293 C.D. 2019, filed Aug. 30, 2021) (*Neely I*), slip op. at 15, 2021 WL 3853060, at *7 (quoting *United States v. Bajakajian*, 524 U.S. 321, 334 (1998) (cleaned up)).

In our view, the nominal fee imposed by the trial court is manifestly unreasonable and constitutes an abuse of discretion. For the violations at issue herein, the Philadelphia Code permits daily fines up to $1,300. *See* Phila. Code § 1-109. These violations persisted for 869 days. Thus, the maximum fine authorized by the Philadelphia Code is $1,129,700.[9] Instead, the trial court imposed merely $250 in fines and costs for safety violations that persisted *more than two years*. It is clear that the trial court failed to consider the gravity of these violations. This is an attached building in a busy residential and commercial district; there is a convenience store attached to Hammond's property. Her failure to bring this property into compliance with the Fire Code posed a danger to the surrounding community.

However, it is not merely the *de minimis* amount. We discern a further abuse of discretion in the trial court's reliance on mitigating factors that were clearly erroneous. According to the trial court, "although [Hammond], an elderly woman, was in fact guilty of these violations, the penalty should be nominal . . . ." Trial Ct. Op. at 4. The trial court relied on three mitigating factors: (1) notice of the violations was mailed to the wrong address; (2) the property was vacant for several years; and (3) the violations were remedied in September 2021 (prior to the hearings). *Id.*

Hammond testified at the first hearing that the City had mailed notices of the fire safety violations to a post office box that she had not used in over 20 years. N.T. Hr'g, 2/24/22, at 19. She also testified to her correct address and that, had she been aware of the violations sooner, she would have reacted immediately. *Id.* at 18.

---

[9] Additionally, the City may charge mandatory reinspection fees totaling $650.

However, this testimony was impeached. At the second hearing, the City introduced evidence documenting that it had sent multiple notices to Hammond, including to her "correct address." *See* N.T. Hr'g, 3/24/22, at 9-10.

While the trial court correctly observed that the property was vacant for several years, that observation was hardly a mitigating factor. The property was vacant *because* the City had issued a notice for Hammond to cease operations at the property, thus forcing Hammond's tenants to vacate the property more than a month after the City first informed Hammond of the fire safety violations. Further, this is an attached building located next to a convenience store. Thus, the property's vacancy did little to ameliorate the danger to the surrounding neighborhood.

Finally, Hammond's apparent remediation of the fire safety violations, in September 2021, occurred *more than two years* after Hammond first learned of the violations. That simply cannot be a mitigating factor. Moreover, upon a subsequent visit to reinspect the property in March 2022, the fire alarm system remained inoperable. *See id.* at 6.

### III. CONCLUSION

For these reasons, we conclude that the trial court abused its discretion when it imposed *de minimis* fines and costs that failed to adequately punish Hammond for her persistent failure to remediate Fire Code violations at her property. *See Eisenberg*, 98 A.3d at 1283; *Blair*, 676 A.2d at 761; *Neely II*, slip op. at 11, 2024 WL 1251373, at *5-6; *JPR Holdings LLC.*, slip op. at 12-13, 2021 WL 71711, at *4-5. Accordingly, we vacate the judgment and remand for the trial court to recalculate appropriate fines and costs after it reconsiders aggravating and mitigating factors

8

supported by the evidence.  *See Neely I*, slip op. at 15, 2021 WL 3853060, at \*7.

 

 

LORI A. DUMAS, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia,                          :
                    Appellant        :
                           :      No. 529 C.D. 2022
          v.                            :
                           :
Janice Hammond                            :

# **O R D E R**

AND NOW, this 29th day of May, 2024, the judgment of the Court of Common Pleas of Philadelphia County (trial court), entered December 11, 2023, is VACATED. This matter is REMANDED, and the trial court is DIRECTED to recalculate appropriate fines and costs after reconsidering aggravating and mitigating factors supported by the evidence.

Jurisdiction relinquished.

                                 _____

                                 LORI A. DUMAS, Judge